Good morning, Your Honor. Sandra Lopez of the Federal Defender's Office in San Diego on behalf of Mr. Brad Santini. I will be reserving five minutes of my time for rebuttal. You know my counsel. I understand. Mr. Santini did not receive a fair trial, and his conviction must be reversed. In this marijuana importation case, the government's expert psychiatrist was not only able to testify that Mr. Santini had prior law enforcement contacts, but that in his opinion those contacts were, quote, extensive, and that in his opinion those contacts were similar in behavior to the charged conduct. All this opinion was based on nothing more than a rap sheet, which the expert himself indicated he had difficulty understanding. The government's expert psychiatrist was also able to testify that Mr. Santini was a marijuana user, the same controlled substance for which he was being charged of importing. This evidence was nothing more than bad character evidence to show propensity and conformity with the charged conduct in violation of 404A. The government's attempt to circumvent this clearly established prohibition of propensity evidence through expert, the rule 702, 703, also fails. There was no vetting of the reliability of the testimony of the expert, and the opinion was nothing more than misleading and confusing to the jury. Each of these circumstances require reversal, and all of the errors set forth in my brief in totality show that Mr. Santini did not receive a fair trial. I'd like to first discuss the law enforcement contacts that the expert psychiatrist testified to. Let me ask you a question on that. It's my understanding that all of this testimony came up on a motion to exclude, a motion to eliminate, correct? And the court made three determinations as to that? The issue did come up prior to trial, yes, Your Honor. And the first one the court said was, well, he had invoked his right to remain silent at the time of arrest. That's not a good one. That's correct. He had extensive law enforcement contacts before the accident, and the last was he had used marijuana to treat his claim. That's correct. Now, I guess my biggest problem about all of that is that your expert came up and said, well, golly, it's after this accident that all these bad things happened. It's after this accident that we had all this problem, and therefore, it had to be this accident and it had to be all of this, and so therefore, we just can't convict this guy. And the court said, I mean, the court, I'm just reading what the court said. But I don't think the defense can have it both ways. I don't think the defense lawyer can say, hey, look, after this accident caused him to certain neural deficits without showing defendant's history before the accident, and therefore, I'm letting it in. Isn't that an abuse of discretion standard? I understand that that was the interpretation of the court, but nowhere in the record was that either the proffered testimony of the defense expert witness or the actual testimony. And the proffered testimony is that excerpt of record 23 to 24, and the testimony is that 323 to 326. I read the testimony, and I'll be fair. I wasn't there. That's what makes it tough. And I was a DJ, so I hate these court of appeals judges who weren't there telling me what to do based on their reading. So I read all that stuff, and I said to myself, well, you know, it's absolutely that's what they're arguing. Dr. Dulles proffered and testified that at no point did he say that Mr. Santini, prior to the date of his accident, was a saint or was a choir boy, as stated by the district court. What he said is that he has this organic brain damage, which is undisputed, and he has this organic brain damage in the left side, left hemisphere of his brain, which is also undisputed. And people with this type of organic brain damage have difficulty with complex reasoning, reading social cues. At no point did he say, I believe Mr. Santini was manipulated on the day of his arrest. At no point did he make those opinions specifically asked to Mr. Santini. All he stated was- Why say them if they weren't to make sure the jury understood that it could be applicable to that day? Why even give the testimony? And that was proper testimony, and the district court found that to be proper testimony. They found it to be proper, and then after finding it to be proper, he said, since we can extrapolate from what now this expert has said, I don't know how to keep away from letting the prosecution have an expert which extrapolates as well. Right, but the expert did not extrapolate as to complex reasoning and inability to read social cues. The expert was discussing something, the government's expert was discussing something completely- Different. When he talks about extensive prior contacts, was there anything specific about contacts that might have supported the notion that he had reasoning or an ability to avoid pressure from others to help? All of the prior contacts were simple possession, use of a controlled substance, and an indecent exposure to himself. None of them involved trickery by others or even involved others at all. None of them had- Let me ask you a question. I know that was going to be your answer. So if he had that kind of information, something in the record similar to what this is about, prior, and it had been introduced simply that, would you have objected to that being introduced? That wasn't the case here. I think Your Honor is proposing whether the government would have said, well, he had similar conduct and wanted to introduce that as 404B. In fact, the government repeatedly said prior to trial, we have no reason to believe that he has any law enforcement contacts or convictions in the past that are similar to the charged conduct. And the prior assistant United States attorney in oral argument indicated, we know, the court knows, the attorneys know, that this is not similar to the charged conduct. We know that. But the expert was allowed to tell the jury this was similar behavior to the charged conduct. So the jury was left with the impression, Mr. Santini is a bad guy. He uses marijuana. He has a lot of law enforcement contacts. The law enforcement contacts were extensive, and they're similar to this importation of marijuana, which everyone knew was not true. Was there any relevance to the past marijuana use? There was no relevance whatsoever. What was it introduced for? According to the government, it was showed that he had bad judgment before the accident, and he has bad judgment now. The marijuana use was introduced to suggest that the testing wasn't accurate. That's correct, Your Honor. The marijuana use, the government proffered over objections made by the defense counsel that his expert indicated our client was currently using marijuana at the time of the testing by the psychologist. Is that true? And it wasn't. And everybody knew it, right? I mean, the defense counsel said, hey, you know, everything suggests he wasn't using marijuana. He was on bond. He was being tested. He never tested dirty. And I think he tested dirty once, which was the week after his arrest. But the interviews by the psychologist were done more than a year later. And we have an audio recording. Let's listen to this audio recording with the government's doctor, where, in fact, the client says he used marijuana in the past prior to his arrest. The court didn't take the time to listen to the audio recording. The attorney, the prosecutor that was making this proffer repeatedly to the court, didn't take the time to listen to the audio which he presented in discovery or even verify the information. It wasn't verified until after the actual use of marijuana came out. I'm sorry. That showed what? What did the audio recording show? Oh, the audio recording excerpt of record 446, it showed that Mr. Santini told the doctor he used marijuana prior to his arrest and wasn't currently using marijuana, which was. . . And he wasn't using marijuana at the time of the testing. Right, and hadn't been using marijuana for an extensive period of time, which destroys any proffered relevancy to the use of marijuana. And I see that I have five minutes remaining, and I'd like to use that for rebuttal. Okay. May it please the Court, Larry Spong for the United States. The district court did not abuse its discretion in admitting evidence of either prior government contacts or prior marijuana use. As to the government. . . What rule would it use to get any of it in? Well, the rule was the 702 of the expert. That is the basis of the expert. Well, even under 702, an expert can't introduce new evidence into the trial that isn't already admitted or that isn't something that should be allowed anyway, so we can't go under 702. So what are you going to get it in under? I believe it is 702 that says even evidence. . . He can base his testimony on hearsay, but he can't introduce it into the trial based on hearsay. He can if the court rules that the probative value outweighs the prejudicial effect, and that's what the court did here. The court very clearly said, as you pointed out earlier, defense can't have it both ways. It can't say that he was tricked here, he's susceptible to criminal behavior after this accident, without comparing it to pre-accident behavior, and that's the essence of the expert testimony. The expert testimony by the government's expert was to criticize Dr. Dulles' experts, the defense expert's testimony, in that he never made what he says, I'm not contesting his testing, I'm contesting the clinical significance of it, and the clinical significance is you have to look at before and after behavior. Dr. Dulles didn't do that. Dr. Kalish did, and that's how it came in. The district court made the – did the balancing and. . . How's it relevant? I mean, the fact that he may have exposed himself or the fact that he had a couple minor possessions, how's that relevant to this whole issue as to whether he had the capability of. . . Actually, he had. . . . . . of being entrapped or led into something? Just to be clear on the record, he had possession, he had indecent exposure at least twice, assault with a deadly weapon at least twice, and transportation. How's that particularly relevant to not being led around by somebody else to secrete marijuana into your vehicle? Well, I think just the general – the fact that with – if someone's susceptible to criminal behavior after or before an accident, you have to say, well, we look at it. Isn't that the whole 404 – you know, isn't that why 404 exists, so that we don't allow character to be used to prove someone deserves – you know, is a bad person? Absolutely, but that's not what happened here. What happened – what Dr. Kalish is testifying to is the clinical significance of Dr. Dulles' opinion. He's not testifying to whether the defendant is more likely to have done something before and after. His testimony is. . . To prove the defense psychologist is wrong by alluding to past drug possessions of – minor drug possessions or indecent exposure. Well, he did have a transportation arrest. He did have an assault with a deadly weapons arrest. So those kind of contacts require some thinking, some judgment, all those things. Assault with a deadly weapon involves some thinking. I mean, is that typically the type of planning that – I mean, I don't know about you, but all the ones I've had are typically things that are seat of the moment. Someone pulls a gun, shoots somebody. It may have been – that's true. It may have been that simple. It may have been more complex. But certainly the expert, in order to make some – let's be clear. The defense argument was that he was being tricked here, despite the fact that there's no evidence of anybody around him ever having been involved in drugs. That's probably a good argument for why he shouldn't have used it. I mean, you probably could have dissuaded it without getting into a past criminal record. You probably could have dissuaded the jury that the defense had any claim without getting into it. But why would you – why do you bring these past criminal conduct? And then, more importantly, why do you bring in this past marijuana, which is even more problematic? Well, again, the reason we bring it in is because that's on the basis of the experts, of our experts' opinion. And he needs to be able to express his opinion. There is no doubt. There's no doubt about the fact that he did use marijuana for pain. The only question is when. And when it came – I thought you brought the marijuana in to show that the testing performed by the other psychologists was not accurate. Right. That's why – if it were the case that he was using, then it could call into question – that's why the whole issue of when is the important part. But there's no evidence of that at all. Well, there was – that's – in fact, it turned out not to be the case. But, in fact, the report of the experts said that was the case. Now, before that all came in, the prosecutors went to sidebar and said, Judge, I'm going to get into this now. And defense counsel brought it up and said – and let's be clear. They were very equivocal. Well, I've listened to the tape. I think I remember that was one defense counsel. The other defense counsel, Ms. Mitchell, who sat through the interview, sat silent. But the prosecutor said, if there's any question, let's bring in Dr. Kalish. And the court didn't do it. Well, you know under 403 that admission of other marijuana use was going to be highly prejudicial, didn't you, in this case? I don't think it would be prejudicial if it came in for the purpose that that was cited, and that is to call into question Dr. Dulles' test. Now, as it turned out, yeah, it was problematic. But the court did some very interesting things here. First of all, the court said to the government, you have to do a hypothetical. And the court did the 403 balancing test. That's on page 364 to 366. Then the court let the government pose the question. Then the court polled the jurors individually to make sure there wasn't any prejudice about this. And then when it all came out, the court instructed the jury about it. So would it have been better for this, looking back, had this all not come in? Absolutely. But does that mean that the court abused its discretion during the trial and resulted in an unfair trial to the defendant? Absolutely not. The court did the balancings that you're talking about. Each time it did a balancing. It's the trial court who sat there and listened to the testimony, understood what it was about, and did it. In fact, he obviously struggled with this. First he said, I'm not going to let it in. But then when he heard what the defense was going to be, he said, no, it is relevant. Now, looking back on it now after everything, you know, would the government take a different approach? It might well. But the question now is, did the court in that setting abuse its discretion? And I would say it did not. Anything else? If there's nothing else, I have nothing further. Anything further? Judge Fletcher? Nothing, nothing. All right. I would just like to make some points. One, he made, opposing counsel made reference to a transportation charge. Prior to the testimony coming in, everyone was aware that it wasn't really transportation or a trafficking offense. And that's an excerpt of record 139, 135. It was merely he had drugs in his car, which the district court found to be mere possession. And we're not submitting the evidence. Either evidence was prohibitive in any way. But even arguing that it was somehow prohibitive, it wasn't sanitized. Talking about the marijuana use, our expert was cross-examined on hypotheticals. What if he was using drugs? And an instruction was given as to the hypothetical. But the government went further and was permitted to ask their own expert about actual use. No instruction was given about, hey, you've heard Dr. Kalish's testimony about actual use. Disregard that. None of that was done. And the prosecutor is the prosecutor. He has an obligation not to present false evidence. And in this case, all the red flags were there. And it wasn't until the testimony was provided that, I mean, that they listened to the audio tape, after the testimony came in that the prosecutor said, oh, quote, I wasn't aware, I wasn't sure. I hadn't listened to the tape. He also had co-counsel at his side who could have listened to the tape. They have a huge office there. Somebody could have verified the accuracy of the representation, especially when it's known, this Court has specifically stated time and time again, that personal use of marijuana in drug trafficking cases is highly prejudicial. And I have no further. Thank you very much. Unless the Court has questions. Thank you. Case 10-50391, United States of America v. Santini is submitted.
judges: Gwin, Fletcher B. , Smith N. R.